UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RENEE M. HARMON, | ) |
| | ) No. 2:11-CV-00005-JPH |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) **(Ct. Rec. 13)** |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on June 8, 2012 (Ct. Rec. 13, 18). Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Frank A. Wilson represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (Ct. Rec. 6). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and remands for further proceedings consistent with this order.

**JURISDICTION**

Plaintiff protectively filed an application for Disabled Widow's Insurance Benefits on March 4, 2008, alleging disability. (Tr. 10). The application was denied initially and on reconsideration. (Tr. 63-65, 68-69).

At a hearing before Administrative Law Judge (ALJ) Connie J.

Haskins on March 5, 2010, plaintiff, represented by counsel, and a
vocational expert testified. (Tr. 55-56). On April 19, 2010, the
ALJ issued an unfavorable decision. (Tr. 7-19). The Appeals
Council denied Ms. Harmon's request for review on November 4, 2010
(Tr. 1-3). Therefore, the ALJ's decision became the final decision
of the Commissioner, which is appealable to the district court
pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for
judicial review pursuant to 42 U.S.C. § 405(g) on January 4, 2010
(Ct. Rec. 1, 4).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing
transcript, the ALJ's decision, the briefs of both plaintiff and
the Commissioner, and are summarized here.

Plaintiff was 50 years old on the alleged onset date of April
20, 2008, and was 51 at the time of the administrative hearing.
(Tr. 29). She obtained a bachelor of science degree in organic
chemistry in 1996. (Tr. 30-33, 120). Plaintiff and her husband
opened their own business supplying medical compounds to various
companies and the National Cancer Institute. (Tr. 32-33).

Plaintiff claims that she cannot work and is due benefits as
a result of edema in her legs as well as depression and anxiety.

In December, 2001, Plaintiff was diagnosed with vulvar
cancer. (Tr. 323). This required surgery including a
lymphadenectomy and vulvectomy in January of 2001. (Tr. 331). She
was treated with debridement, medications, chemotherapy, radiation
therapy and reconstructive surgery. (Tr. 47, 331). Following
surgery, plaintiff developed lymphedema in her lower-right
extremity, her left ankle and foot, and in her pelvic and pubic

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                                    - 2 -

areas. (Tr. 331). Plaintiff testified that fluid build-up in her abdomen and legs causes pain requiring frequent elevation of her legs, for an hour or more, and "manual pumping" of the fluid from her legs. (Tr. 34). Treatment records from St. Luke's rehabilitation center reflect these symptoms. (Tr. 326-340). Additionally, she stated that a nerve issue caused by her cancer surgery (muscle transfer) causes a severe "lightning" like pain-sensation in her leg and groin area that requires prescription medication. (Tr. 36). She indicated that these problems have worsened with time, continuing through the prescribed period beginning in April 2008. (Tr. 35). Plaintiff testified that these complications from treatment and their management are the primary factor hindering her ability to work since April, 2008. (Tr. 35).

Plaintiff also asserts that her inability to work stems from issues with depression and anxiety (Ct. Rec. 14 at 11-12). She suffered a fractured coccyx while working as a part-time maid in 2007 which resulted in degenerative disc disease of the spine. Plaintiff, however, has indicated that this impairment has nothing to do with her disability claim, and does not effect her alleged lymphedema impairment (Tr. 139).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a

disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically "severe" impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from

performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting

evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At step one the ALJ found that plaintiff did not engage in substantial gainful activity after April 20, 2008, the alleged onset date (Tr. 12). At step two, she found that plaintiff suffers from the severe impairment of degenerative disease of the spine with chronic pain, but did not consider plaintiff's alleged psychological problems (depression and anxiety) nor her lymphedema to constitute severe impairments (Tr. 12). At step three, the ALJ found that plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 12). The ALJ found plaintiff less than completely credible because her statements regarding the intensity, persistence, and limiting effects of her symptoms were "inconsistent" with the ALJ's RFC assessment. (Tr. 13). At step four, the ALJ determined that the plaintiff has the RFC to perform the full range of "light exertional" work activity, partially based upon a Social Security Administration (SSA) Function Report completed by plaintiff outlining her activities of daily living. (Tr. 13). At step five the ALJ found there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (Tr. 18). The ALJ found plaintiff has not been disabled as defined by the Social Security Act at any time from onset through the date of the decision, April 20, 2008 (Tr. 18).

**ISSUES**

Plaintiff contends the ALJ erred when she weighed the medical

evidence, found her anxiety disorder and lymphedema to not
constitute severe impairments, and that she failed to
appropriately develop the record and appropriately consider the
opinion of treating physician, Dr. Thomas Boone (Ct. Rec. 14 at 9-
18). Plaintiff also alleges that the ALJ incorrectly discounted
her testimony (Ct. Rec 14 at 16). The Commissioner asks the court
to affirm, asserting the ALJ's decision is supported by
substantial evidence and free of legal error, that she had no duty
to further develop the record, and that she reasonably discounted
Dr. Boone's opinion. (Ct. Rec. 19 at 13-27).

### DISCUSSION

Plaintiff asserts that the ALJ's finding of no severe
impairment regarding both her anxiety disorder and lymphedema are
in error and not supported by substantial evidence (Ct. Rec. 14 at
9). A "severe" impairment is one which significantly limits
physical or mental abilities to do basic work-related activities.
20 C.F.R. §§ 404.1520© and 416.908. It must result from
anatomical, physiological, or psychological abnormalities which
can be shown by medically acceptable clinical and laboratory
diagnostic techniques. It must be established by medical evidence
consisting of signs, symptoms, and laboratory findings, not just
the claimant's statement of symptoms.

Step two is a de minimis inquiry designed only to weed out
insufficient claims at an early stage in the sequential process.
*Bowen*, 482 U.S. at 148. Claims are denied at step two only where a
claimant's abnormalities are slight and do not significantly limit
any basic work activity. *Id*. at 158. "Basic work activities" are
the aptitudes required to do most jobs, including 1) physical

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                              - 8 -

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgement; 5) responding appropriately to supervision, co-workers and usual work situations; 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

**A. Psychological Impairments**

The plaintiff asserts the ALJ failed to properly credit the opinions of examiners David Henzler M.D., Thomas Boone, M.D., and treating psychologist Chris Holland, Ph.D, in finding her depression and anxiety disorder to not be severe (Ct. Rec. 14 at 11-12). The Commissioner answers that there is substantial evidence supporting the ALJ's finding that her alleged anxiety issues did not rise to the level of a disorder and were not a severe impairment (Ct. Rec. 19 at 14-16).

The Commissioner is correct.

Plaintiff's previous treatments for anxiety are remote and substantially unrelated to the alleged onset date in 2008 and the prescribed period before the ALJ. In March 2001, plaintiff was seen by Dr. Holland at Deaconess Medical Center in order to deal with "anxiety issues" associated with her prolonged hospital stay following surgery for cancer (Tr. 444). Her cancer doctors indicated that Dr. Holland "was able to help the patient understand the need for continued hospitalization." (Tr. 435). Plaintiff was seen briefly at Stevens County Counseling in June of 2000 under a self referral, but she did not return until 2010,

when her counselor's tests indicated she was "functioning pretty well" and only had mild symptoms of anxiety. (Tr. 285). In March 2010, Dr. Boone saw plaintiff and made a finding of "severe anxiety disorder," however, this diagnosis was properly discounted by the ALJ. Psychiatric findings "obtained after...the ALJ [has] issued an adverse determination [are]...less persuasive." *Weetman*, 877 F.2d at 23.

Contrary to Dr. Boone's 2010 diagnosis, substantial evidence in the record supports the finding that plaintiff's anxiety disorder was not severe around the alleged onset date in 2008. In July 2008, when plaintiff was seen by Dr. Ralph Kunkel of Inland Cardiology Associates, he noted that she "denied symptoms of depression or anxiety." (Tr. 220). The following month, plaintiff completed an SSA Function Report indicating that she had no problem understanding and following instructions, maintaining attention through the completion of tasks, or responding appropriately to authority and stressful work circumstances(Tr. 128). While neurologist Dr. Henzler said that he had a suspicion of anxiety in September 2008, he also noted that plaintiff's "memory, attention span, concentration and fund of knowledge were normal for age." (Tr. 241).

Based on the above medical evidence and testimony of plaintiff, the court must conclude that substantial evidence supports the ALJ's determination that plaintiff's anxiety and depression is not a severe impairment. On its own, her anxiety does not significantly limit plaintiff's ability to perform basic work activities. (Tr. 122-131).

That said, in assessing a claimant's residual functional

capacity the ALJ must, and in this case did, consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. §§ 404.1545(e); Social Security Ruling (SSR) 96-8P. The ALJ specifically referenced plaintiff's ability to handle stress, follow instructions and pay attention, among other things, in her initial decision (Tr. 14).

**B. Lymphedema**

Plaintiff also alleges that the ALJ erred by failing to recognize her lymphedema as a severe impairment and in assessing her functional limitations resulting from her lymphedema (Ct. Rec. 14 at 10). Additionally, plaintiff argues that the ALJ had a duty to develop the record concerning her lymphedema and that she inappropriately disregarded the treating physician's opinion (Ct. Rec. 12-19).

In June 2001, following her lymphadenectomy and vulvectomy, plaintiff was seen at St. Luke's Rehabilitation Institute. On her first visit Pierrette Wing, PT, completed an "Adult Outpatient Physical Therapy Initial Evaluation" form (Tr. 332). Certain clinical diagnostic techniques and tests were performed, including a "stemmer sign" test, range of motion tests, and taking circumferential measurements of the effected extremities (Tr. 332). Ms. Wing concluded that the plaintiff had "significant lymphedema in her entire lower body, especially the right lower extremity" (Tr. 332). She further noted the need for plaintiff to "learn lymphedema precautions, and self measuring to monitor this issue." (Tr. 332). Plaintiff told Ms. Wing that her goals included getting back to work and the ability to be "on my feet and up and

down and not hurt any more." (Tr. 333). At a subsequent
appointment Ms. Wing's reports noted plaintiff's lymphedema
included a "large, complicated area of involvement," and that her
case was "more complex than average." (Tr. 336). In the same
report, Ms. Wing states that plaintiff's long-term goal as
"independent management of her lower body lymphedema" and
indicates that plaintiff "needs to tend to this problem for the
rest of her life." (Tr. 336, 339-340).

Emergency room records from Sacred Heart Medical Center in
March 2006 note that although plaintiff did not present with edema
during her visit, that she had "support stockings in place as she
has some chronic lymphedema" (Tr. 235).

Plaintiff was examined by State Agency consultant Craig
Wingate in May 2008 in regards to her claim for benefits (Tr.
184). Dr. Wingate reviewed the record through May 2008 and opined
that she retained the ability to perform a full range of light
exertional work activity (Tr. 191). There is no indication that
Dr. Wingate conducted any of his own diagnostic exercises or tests
(Tr. 184-191).

Claimant was referred to cardiologist Ralph Kunkel, M.D.,
F.A.C.C. in July 2008 to address plaintiff's chest pain and fears
of a cerebrovascular incident (Tr. 240). Dr. Kunkel found no
cardiac abnormalities, however, he did note "ongoing edema in her
legs secondary to an inguinal lymph node dissection from cancer"
(Tr. 219).

Claimant was seen by neurologist David Henzler, M.D., in
September of 2008 to assess difficulties she had with her focus,
pain and dizziness. Dr. Henzler found plaintiff to be in

"excellent" neurological health (Tr. 241). In a letter addressed to treating physician Dr. Boone, Dr. Henzler stated that when shopping plaintiff "can only walk about 15 minutes and then her legs tend to fill up with the lymphedema fluid and hurt" (Tr. 244).

The court's records indicate that Dr. Thomas Boone has been plaintiff's treating physician since at least 1998 and on through to the present (Tr. 98, 315). The record includes the clinical observations of Dr. Boone, on a nearly monthly basis, tracking plaintiff's symptoms beginning in September 2007 through early 2010 (Tr. 205-207, 245-274). Each treatment note consists of a series of "Review of Systems" and "Physical Exam" diagnostic check-boxes, along with space for Dr. Boone to write a short assessment of his findings. There are eighteen of these records, and Dr. Boone noted edema of the extremities in six of the "Physical Exam" reports (Tr. 206, 207, 256, 258, 260, 262). Dr. Boone also noted symptoms of the abdominal area on five occasions, at times specifying that these symptoms occurred in the "lower" abdominal area, an area of concern for plaintiff's lymphedema (Tr. 207, 248, 249, 256, 260). At the hearing the ALJ requested, through plaintiff's attorney, that Dr. Boone provide an additional report explaining the severity of plaintiff's symptoms and providing his opinion on how her condition impacts her ability to work (Tr. 50-51).The ALJ indicated that this was preferential to having plaintiff examined by a consulting physician due to Dr. Boone's familiarity with her records (Tr. 53). The ALJ prospectively agreed with the physical capacity form that was to be provided by plaintiff's attorney to Dr. Boone (Tr. 51-52).

Additionally, the ALJ requested Dr. Boone's report be given that afternoon, March 25, 2010, and Dr. Boone completed it on that day (Tr. 53, 315). The report was titled "Physical Capacities Evaluation," and stated that plaintiff:

> (1) can sit for no more than two hours total in an eight-hour work day; (2) can stand for no more than two hours total in an eight-hour work day; (3) can walk for no more than half and hour in an eight hour work day; (4) can lift up to twenty pounds but only occasionally; (5) cannot use her left hand or foot for pushing and pulling; (6) cannot use her left hand for fine manipulation; (7) can never bend, squat, crawl, climb or reach; and (8) it totally restricted from being around moving machinery or unprotected heights and from driving automotive equipment.

(Tr. 17, 315).

Dr. Boone listed the diagnosis of "Lymphedema –> Vulvar Cancer," among other things, on this report (Tr. 315).

In addition to medical records and evidence, the plaintiff provided testimony on the limiting effects of her lymphedema. During the administrative hearing, plaintiff confirmed that the pain and the constant management of the condition represented "the biggest problem" hindering her ability to work (Tr. 35). She explained which activities bring about her symptoms, for example, sitting for over 30 minutes (Tr. 34). She explained the self-management procedures she uses to manage her lymphedema symptoms, including wrapping the affected area with compression bandages and elevating her legs for prolonged periods of time each day (Tr. 34). Her statements regarding her limitations are largely consistent with information she provided in her Social Security Administration Function Report, which the ALJ relied upon in finding plaintiff less than credible (Tr. 122-158).

The ALJ determined that the plaintiff's medically

determinable impairments could "reasonably be expected to cause some of the alleged symptoms," but she did not find plaintiff's statements regarding the intensity, persistence or limiting effects of her symptoms to be credible (Tr. 14). Absent affirmative evidence of malingering, the ALJ's reasons for discounting a claimant's testimony must be clear and convincing. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834-35 (9th Cir. 1995). There has been no suggestion of malingering on the part of the plaintiff. The ALJ did not specifically address the limits or symptoms that plaintiff testified to, but instead dismissed them on the whole, because they were in conflict with her RFC assessment (Tr. 14). While it is the province of the ALJ to make credibility determinations the ALJ should, on remand, provide specific reasons that are supported by evidence for discounting her testimony.

When developing her RFC assessment the ALJ did not give "significant weight" to the opinion of treating physician, Dr. Boone, since there was "little evidence to support that opinion and substantial evidence from multiple sources that is inconsistent" with his opinion (TR. 17). Thus, while the ALJ found that plaintiff's 2007 injury of a fractured coccyx (Tr. 183) resulted in the severe impairment of "degenerative disk disease of the spine with chronic pain," she did not find plaintiff's lymphedema to be a severe impairment (Tr. 12).

**1: Severity of Lymphedema Impairment and RFC Determination**

The ALJ did not err, and reasonably found that plaintiff's lymphedema was not severe. The ALJ relied upon substantial evidence in determining that plaintiff's lymphedema is not severe. In steps one through four, the plaintiff bears the burden of establishing a severe impairment and inability to work. Erickson v. Shalala, 9 F.3d 813 (1993). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If substantial evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen,* 749 F.2d at 579.

The record considered by the ALJ contains substantial evidence suggesting that plaintiff's lymphedema is not severe. For an impairment to be severe it must be shown by "medically acceptable clinical and laboratory diagnostic techniques" and must be established through the use of medical evidence including "signs, symptoms and laboratory findings." 20 CFR §§ 404.1508 and 416.908. Dr. Boone's opinion is plaintiff's primary source of medical evidence regarding lymphedema that supports the level of impairment she has alleged. The ALJ noted that Dr. Boone's March 2010 evaluation of plaintiff's functional capacity was not based on laboratory or "objective test results" and that he did not provide explanations or clinical findings in support of his assertions (Tr. 17). Plaintiff did not have symptoms of lymphedema during twelve of her eighteen documented appointments with Dr. Boone (Tr. 205-207, 245-274).

There is also medical evidence on record which contradicts Dr. Boone's opinion, noted by the ALJ. Dr. Wingate examined the record and wrote that plaintiff was "three years clear" of cancer treatment, and that her edema was well controlled by her treatments (Tr. 191). Ultimately, Dr. Wingate opined that plaintiff retained a the ability to "perform at least light work." (Tr. 191).

In her decision, the ALJ notes that plaintiff was released to work without restrictions after being treated for a coccyx fracture she received in 2007 while working as a maid (Tr. 13, 82). She also took care of an elderly couple in May 2008, doing physical labor (Tr. 30, 82). This employment did not rise to the level of S.G.A., but it does speak to the residual capacities of the plaintiff.

There is evidence in the record, however, suggesting that plaintiff's lymphedema does limit her ability to perform work-related functions, and *could* therefore be considered severe. Dr. Boone's "Physical Capacities Evaluation" form specified which activities were precluded by her impairments, and indicated her durational limits for essential work activities (Tr. 315). Plaintiff testified that her lymphedema was the primary issue hindering her ability to work (Tr. 35). She testified how regular work activities, such as sitting for twenty to thirty minutes, brought about symptoms causing pain and requiring self-treatment (Tr. 34, 122-158). Dr. Kunkel, Dr. Henzler and Dr. Boone both noted the presence of lymphedema in their records in 2008(Tr. 240, 244, 205-207, 245-274). Plaintiff was told by her physical

therapists in 2001 that this would be a lifelong condition (Tr. 339-340).

The ALJ's interpretation of the conflicting evidence in the record is reasonable and supported by substantial evidence that was included in her decision. Plaintiff did not establish, to the required standard of medical evidence, that as a separate and distinct impairment her lymphedema significantly limits her ability to perform basic work activities.

Nevertheless, in determining a claimant's residual functional capacity, the ALJ must consider the limiting effects of *all* of the claimant's impairments, even if they are not severe. 20 C.F.R. §§ 404.1545(e) and 416.945(e); Social Security Ruling (SSR) 96-8P. It is not apparent in this case that the ALJ specifically considered the combined limiting effects of plaintiff's severe degenerative disc disease and her non-severe lymphedema in determining her overall RFC. Beyond her finding her lymphedema to be not severe, the ALJ did not significantly calculate plaintiff's lymphedema in her decision. Instead her decision focused primarily on plaintiff's inconclusive cardiac and neurological examinations completed by Dr. Kunkel and Dr. Henzler, respectively. In her findings of fact on plaintiff's lymphedema, the ALJ briefly stated that:

> ...the record does not establish that this prior condition has affected claimant's ability to perform work-related activities in any way. Further, there is no evidence that there has been any recurrence of this impairment.

(Tr. 12).

The ALJ's statement is not supported by substantial evidence. Three medical doctors, including the treating physician, noted the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                          - 18 -

presence of lymphedema after the alleged onset date in 2008(Tr. 240, 244, 205-207, 245-274). Plaintiff is able to manage her symptoms through the use of compression stockings, leg pumping and leg elevation (Tr. 34, 235), but this does not imply that she is symptom free or that it does not impact her ability to complete a normal work day. Dr. Boone found substantial limitations in plaintiff's ability to work due in part to her lymphedema (Tr. 315), and this should have been directly addressed by the ALJ in her RFC determination despite finding that her lymphedema was not a severe impairment. This error is not harmless because it is not inconsequential to the ALJ's ultimate non-disability determination. *Stout v. Commissioner of Social Security Administration*, 454 F3.d 1050, 1055 (9th Cir. 2005). This error requires a remand for further proceedings. This court is unable to confidently conclude that no reasonable ALJ could have reached a different disability determination upon full consideration of plaintiffs lymphedema combined with her other impairments. It is the obligation of the ALJ, and not of this court, to consider these combined effects. *Id*. At 1054. Independent findings by this court regarding that combined effect could not be relied upon by a reviewing court since that court is constrained to review the reasons offered by the ALJ for her decision. *Id*.

### 2: Development of the Record  and Duty to Re-Contact Treating Physician Before Discounting Opinion

Plaintiff also alleges that the ALJ failed to fully develop the record on the connection between her cancer treatment and her "ongoing lymphedema" impairment (Ct. Rec. 14 at 14). The Commissioner responds that the burden to produce evidence is on

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                              - 19 -

claimant at step two, and that in order to trigger the ALJ's duty
to develop the record there must be sufficient objective evidence
in the record to suggest the existence of a condition which could
have a material impact on the disability decision (Ct. Rec. 19 at
17-19).

Plaintiff is correct, and the issue of plaintiff's lymphedema
and its limiting effects on basic work functions should be
remanded to allow for further examination and testing. In Social
Security cases, the ALJ has a special duty to develop the record
fully and fairly and to ensure that the claimant's interests are
considered, even when the claimant is represented. *Tonapetyan v.
Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). SSA rules provide that
adjudicators must always carefully consider medical source
opinions about any issue, and particularly those of treating
physicians (SSR 96-5p). Though Dr. Boone's physical capacities
statement was not supported by objective laboratory testing, his
findings, considered with other medical and non-medical evidence,
"suggest the existence of a condition which could," if further
addressed, materially impact on the disability decision. Were the
ALJ to grant significant weight, on further examination, to Dr.
Boone's physical capacities evaluation it would undoubtedly effect
the ultimate finding on disability. Furthermore, the rules require
that we re-contact treating physicians when...the bases for such
opinions are not clear to us (SSR 96-5p). The ALJ gave little
weight to Dr. Boone's March 25, 2010 diagnosis and assessment
because he didn't identify the objective methods by which he
arrived at his findings (Tr. 17). The ALJ stated that Dr. Boone
"simply" listed his diagnoses with little evidence to support his

claim, and that there was "substantial evidence" contradicting his claims (Tr. 17).

> Because treating source evidence (including opinion evidence) is important, as contemplated by the regulations, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner, and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make every reasonable effort to re-contact the source for clarification of the reasons for the opinion.

(SSR 96-5p).

Dr. Boone should be re-contacted so that he can further develop and explain his findings with regard to plaintiff's lymphedema. The records indicate that he has treated the plaintiff since at least 1998 (Tr. 98), and this familiarity with her physical condition gives his opinion "special weight." *Fair v. Bowen*, 885 F.2d 597, 604-5 (9th Cir. 1989).

When contradicted by other evidence the ALJ may reject the treating physician's opinion only if she states "clear and convincing" reasons supported by substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). While the lack of objective testing and ambiguity in Dr. Boone's diagnoses made it reasonable for the ALJ to consider plaintiff's lymphedema non-severe, it is not clear and convincing evidence that relieves the ALJ from her general duty to scrupulously...probe into, inquire of, and explore all the relevant facts. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). The only medical evidence, with regard to lymphedema, which directly contradicts Dr. Boone's treating source statement is consulting physician Dr. Wingate's assessment that plaintiff could do a full range of "light work" (Tr. 191). However, the opinion of

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                        - 21 -

a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of...a treating physician. *Lester*, 81 F.3d at 830-31 (9th Cir. 1995).

Citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir.2001), the Commissioner concedes, and this court agrees, that it is the inadequacy and ambiguity of the evidence rather than the rejection of the treating physician that triggers the ALJ's duty to re-contact a treating physician. (Ct. Rec. 19 at 21-22). SSA regulations concerning the re-contacting of treating physicians state:

> We will seek additional evidence or clarification from your medical source when the report...contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

*Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

As plaintiff states, the ALJ gives Dr. Boone's opinion as to plaintiff's limitations no significant weight because of his "scant records" and lack of acceptable clinical and laboratory diagnostic techniques(Tr. 16-17). This points to a finding of inadequacy instead of a rejection due to clear and convincing reasons supported by substantial evidence. As such, SSA regulations require that Dr. Boone be re-contacted to provide both additional evidence as well as clarification. *Id.*

The ALJ herself indicated the need to re-contact Dr. Boone by requesting that he update and document his opinions on the severity and impact of plaintiff's lymphedema using his Physical Capacities Evaluation form (Tr. 52-58). The ALJ requested that the form be both provided to and completed by Dr. Boone that same day, which it was (Tr. 58). The form required Dr. Boone to "identify

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                              - 22 -

diagnoses and identify specific functional limitations" as the ALJ confirmed with plaintiff's attorney. On remand, Dr. Boone should be afforded the opportunity to explain his treating opinion with ample time to complete any objective diagnostic testing. Without such an opportunity, any discounting of Dr. Boone's opinion as treating physician will be less than clear and convincing, and not based on substantial evidence.

On remand, the ALJ should: (1) Re-contact Dr. Boone and request that he explain his opinion with respect to plaintiff's lymphedema, supported by the proper laboratory and clinical diagnostic techniques; (2) provide clear and specific reasons for discounting plaintiff's credibility ; (3) if necessary, based on new information in the record, reassess whether or not plaintiff's lymphedema is a "severe" impairment; (4) if necessary, make a new RFC assessment, considering all of plaintiff's medically determinable impairments; and (5) make a new step four and, if necessary, step five analysis utilizing the services of a vocational expert.

The court expresses no opinion as to what the ultimate outcome will or should be. The fact-finder is free to give whatever weight to the evidence is deemed appropriate. *Sample v. Schweiker*, 694 F.2d 636, 642 (9th Cir.1982).

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is not free of legal error and supported by substantial evidence, but finds that there are unresolved issues and the record does not clearly require a finding of disability.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                          - 23 -

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED.** The matter is remanded to the Commissioner of Social Security for further proceedings consistent with this decision.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED** as moot.

The District Court Executive is directed to file this Order, provide copies to counsel for the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 11th day of July, 2012.

s/ James P. Hutton

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE